**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Foster,               ) | No. CIV 06-588-TUC-JMR (GEE) |
|                                ) | |
| Plaintiff,       ) | **REPORT AND RECOMMENDATION** |
|                                ) | |
| vs.                            ) | |
|                                ) | |
| Michael J. Astrue, Commissioner of the) | |
| Social Security Administration, ) | |
|                                ) | |
| Defendant.       ) | |
|                                ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security[1] pursuant to 42 U.S.C. §1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on March 12, 2007, and a cross-motion for summary judgment filed by the defendant on April 10, 2007. [#9, 10][2]

The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion and remand for further proceedings. The ALJ's conclusion that Foster can perform the exertional demands of medium work is not supported by substantial evidence.

---

[1] The new Commissioner for Social Security, Michael J. Astrue, is substituted for the original defendant, Joanne B. Barnhart, pursuant to FED.R.CIV.P. 25(d)(1).

[2] Clerk's record number.

1    PROCEDURAL HISTORY

2    In February of 2003, Foster filed an application for supplemental security income
3 benefits alleging disability due to "heart condition, major depression." (Tr. 174, 182).

4    The Social Security Administration (SSA) denied her application initially and again upon
5 reconsideration. (Tr. 69-72, 75-78). Foster requested review, and on October 13, 2004,
6 appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum. (Tr.
7 568). The ALJ found Foster was not disabled. (Tr. 568-76). Foster appealed, and on June 4,
8 2004, the Appeals Council vacated the decision of the ALJ and remanded the case for further
9 proceedings. (Tr. 582, 577-79). The Appeals Council instructed the ALJ to (1) "Obtain
10 updated treatment records, particularly from Southeastern Arizona Behavioral Health Services,
11 Inc.," (2) "Address all relevant lay statements and testimony of record. . ." and (3) "If
12 warranted by the expanded record, obtain evidence from a vocational expert . . ." (Tr. 577-79).

13    On November 7, 2005, Foster appeared with counsel at a second hearing before ALJ
14 Baum. (Tr. 27). On February 2, 2006, the ALJ issued a second ruling again finding Foster was
15 not disabled. (Tr. 27-36). Foster appealed , but the Appeals Council denied review making the
16 decision of the ALJ the final decision of the Commissioner. (Tr. 8-10); 20 C.F.R. § 416.1481.

17    Foster then filed the instant complaint in U.S. District Court appealing the
18 Commissioner's final decision. She filed the instant motion for summary judgment on March
19 12, 2007. [# 9]   The Commissioner filed the instant cross-motion for summary judgment on
20 April 10, 2007. [# 10] Foster filed a combined response and reply on April 27, 2007. The
21 Commissioner filed a reply on May 4, 2007.

22

23    Claimant's Work History and Medical History

24    Foster was fifty-six years old on the date of the ALJ's final decision. (Tr. 28). She is
25 a high school graduate and completed two years of college. (Tr. 28, 180). In the past, she
26 worked as an accountant, jeweler, and receptionist. (Tr. 134, 175, 644).

27

28

1    Foster suffers from both psychological and physical impairments. She has had
2 anxiety/depression for many years. She suffers from chronic low back pain, and in 2001, began
3 developing cardiovascular disease.

4    In July of 1999, William R. Sullivan II, M.D., conducted a psychiatric evaluation of
5 Foster. (Tr. 495-97). He offered the following diagnostic impression: "Axis I: Major
6 Depressive Disorder without Psychotic Features, Rule out Post Traumatic Stress Disorder; Axis
7 II:   Deferred;  Axis III: History of Hypothyroidism, History of Hernia Operation,
8 Hysterectomy; Axis IV: Primary Support Group, Economic, Occupational; Axis V: 55-60."
9 *Id.*

10   In May of 2000, the Arizona Department of Economic Security Disability Determination
11 Service Administration (DDS) referred Foster to Huntley V. Hoffman, Ph.D., for a psychiatric
12 consultation. (Tr. 241-44). Hoffman offered the following diagnosis: Axis I: 311 Depressive
13 Disorder NOS, 309.81 Post Traumatic Stress Disorder, R/O Anxiety Disorder NOS; Axis II:
14 No diagnosis; Axis III: Back pain, Hot flashes.

15   In May of 2000, Foster was examined by Genifer Y. Chavez, M.D., for the DDS. (Tr.
16 245-47). Chavez summarized Foster's physical condition as follows: (1) Chronic low back
17 pain; (2) Decreased visual acuity. *Id.* Chavez opined Foster "may tolerate sitting two to four
18 hours at a time, aggregate six to eight hours per day." *Id.* "She may stand and walk one to three
19 hours at a time, aggregate six to eight hours per day." *Id.* "She may lift 50 lbs. occasionally and
20 25 lbs. frequently." *Id.*

21   In May of 2000, a non-examining state agency physician reviewed Foster's medical
22 records and opined she could lift 50 lbs. occasionally and 25 lbs. frequently despite her "low
23 back pain" and "[poor] visual acuity". (Tr. 248-55). She should only occasionally climb
24 ladders, rope or scaffolds. *Id.* Otherwise she had no functional limitations. *Id.*

25   In June of 2000, a non-examining state agency psychologist, Paul Tangeman, Ph.D.,
26 completed a Psychiatric Review Technique form based on his review of the medical records.
27 (Tr. 260-68). He summarized Foster's condition as "12.04 Affective Disorders, depr[ession]
28 NOS" and "12.06 Anxiety Related Disorder, PTSD." *Id.*   He found Foster "often" had

- 3 -

1  "deficiencies in maintaining concentration, persistence or pace." *Id.* She had only "slight"
2  limitation in the areas of "restriction of activities of daily living" and "difficulties in maintaining
3  social functioning." *Id.* Tangeman completed a mental residual functional capacity assessment.
4  (Tr. 256-59). He found her "moderately limited" in her "ability to maintain attention and
5  concentration for extended periods"; "the ability to perform activities within a schedule,
6  maintain regular attendance and be punctual within customary tolerances"; and "the ability to
7  complete a normal workday and work week without interruptions from psychologically based
8  symptoms. . . ." *Id.*

9  In December of 2001, Foster was examined by William G. Elliot, D.O., complaining of
10 chest pain, shortness of breath, left arm and leg pain. (Tr. 271). He performed a left heart
11 catherization in January of 2002. (Tr. 274).

12 Foster was briefly admitted to the hospital in September of 2002, March of 2003, and
13 April of 2003, complaining of chest pain and syncope. (Tr. 282, 333, 351).

14 Jose Gonzalez, M.D., performed a right coronary angiogram in October of 2002. (Tr.
15 296). He found "[m]oderate ostial left and right coronary artery stenosis." *Id.* He continued
16 treating her for chest pain and fainting spells in October of 2002 (Tr. 323), December of 2002
17 (Tr. 306) and March of 2003. (Tr. 305, 338).

18 In May of 2003, non-examining state agency psychologist, Paul Tangeman, Ph.D.,
19 completed a second Psychiatric Review Technique form based on his review of the medical
20 records. (Tr. 370-83). He summarized Foster's condition as "12.06 Anxiety Related Disorder"
21 and "12.08 Personality Disorder." *Id.* He found Foster had "[r]ecurrent severe panic attacks
22 . . . occurring on the average of at least one a week." *Id.* She had "moderate" "difficulties in
23 maintaining social functioning." *Id.* She had only a "mild" limitation in her "restriction of
24 activities of daily living" and "difficulties in maintaining concentration, persistence or pace."
25 *Id.* Tangeman completed a mental residual functional capacity assessment. (Tr. 384-87). He
26 found her "moderately limited" in her "ability to interact appropriately with the general public,"
27 "ability to get along with co-workers" and "ability to respond appropriately to changes in the
28 work setting." *Id.*

In May of 2003, non-examining state agency physician, Hubert R. Estes, M.D., completed a Psychiatric Review Technique form based on his review of the medical records. (Tr. 509-21). He summarized Foster's condition as "12.04 Affective Disorder, Dysthymia" and "12.08 Personality Disorder." *Id.* He found only "mild" limitation in her "restriction of activities of daily living," "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence or pace." *Id.*

In June of 2003, Paige Schaper, Ph.D., performed a mental status examination of Foster for the Disability Determination Services. (Tr. 366-69). She offered the following diagnosis: "Axis I: Agoraphobia with possible history of panic attacks; Axis II: Personality disorder NOS. The claimant has dependent traits. Axis III: Heart problem. Axis IV: Unemployment, financial difficulties, and history of abusive relationship." *Id.*

In August of 2003, William R. Sullivan II, M.D., completed a disability assessment for the Arizona Department of Economic Security. (Tr. 634). He asserted Foster has "a physical or mental incapacity which prevents him/her from performing any substantially gainful employment." *Id.* He diagnosed her with schizophrenia. *Id.*

In February of 2004, Mark C. Carnett, D.O., Foster's primary care physician, wrote a letter "to certify that Ms. Margaret Foster-Freeman is, indeed, disabled due to her multiple medical problems." (Tr. 541, 653).

In March of 2004, Foster was examined by William G. Elliot, D.O., F.A.C.C., for evaluation of chest pain (Tr. 556–57). He offered the following impression: "1. Angina pectoris, 2. Chronic left bundle-branch block, 3. Hyperlipidemia, 4. Hypothyroidism." *Id.*

At the first hearing, on October 13, 2004, Foster testified she could not work due to anxiety, depression, chest pain, blackouts, incontinence and hernia. (Tr. 649, 651, 655, 658). She stated she has trouble lifting five pounds. (Tr. 659). She cannot stand for more than fifteen minutes. *Id.*

Beginning in late 2004, Foster received mental health treatment from the Southeastern Arizona Behavioral Health Services (SEABHS). (Tr. 583-96). In August of 2005, Jennifer S. Gunther, M.D., submitted a Mental Residual Functional Capacity Evaluation. (Tr. 583-86).

1  Gunther diagnosed Foster with DSM-IV code 300.4 (dysthymic disorder)[3]. *Id.* She found
2  Foster to be "markedly limited" in her ability to (1) "understand, remember and carry out . . .
3  complex job instructions"; (2) "understand, remember and carry out detailed but uncomplicated
4  job instructions"; (3) "interact appropriately with supervisors and co-workers…"; (4) "maintain
5  sustained concentration and attention over an entire eight hour work day"; and (5) "respond
6  appropriately to customer work pressures five days a week in a routine work setting." *Id.*

7  At the second hearing, on November 7, 2005, Foster testified she cannot work due to
8  angina, for which she takes nitroglycerin. (Tr. 677). She had a recent stroke and, as a result, her
9  left side goes numb. (Tr. 678). She suffers from anxiety attacks. (Tr. 679). She has difficulty
10 interacting with people. (Tr. 684). Foster explained she could stand for 10 to 15 minutes. (Tr.
11 683). She could sit for half an hour before she had to change position. *Id.*

### CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed

---

[3] Diagnostic and Statistical Manual of Mental Disorders, 345 (4th ed. 1999).

- 6 -

impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[4] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Based on the claimant's exertional ability, age, education, and work experience, the grids determine whether or not the claimant is disabled. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If

---

[4] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1 significant non-exertional limitations prevent the claimant from performing the full range of
2 work in any exertional category, the ALJ must take the testimony of a vocational expert to deny
3 the claim. *Id.* at 1341.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Foster "has not performed substantial gainful activity since February 7, 2003." (Tr. 34). At step two, he found Foster had severe impairments: "anxiety disorder, borderline personality disorder, angina pectoris[5], and left bundle branch block[6]." *Id.* At step three, the ALJ found Foster's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then analyzed Foster's residual functional capacity. (Tr. 35). He found she "has the residual functional capacity to perform unskilled medium work" assuming this was "work requiring few stressful, social demands." *Id.* At step four, the ALJ found Foster could not perform her past relevant work as an accountant. *Id.* At step five, the ALJ found Foster's non-exertional impairments did not significantly compromise her ability to perform the full range of medium work. *Id.* He employed the grids to conclude Foster was not disabled. *Id.*

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age,

---

[5] "Severe constricting pain in the chest . . . due to ischemia of the heart muscle usually caused by coronary disease." Stedman's Medical Dictionary 83 (26th ed. 1995).

[6] An interventricular block due to interruption of conduction in one of the two main cardiac nerve bundles. Stedman's Medical Dictionary 213 (26th ed. 1995).

- 8 -

1 education, and work experience, that person cannot engage in any other kind of substantial
2 gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
3 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

4       To establish a *prima facie* case of disability, the claimant must demonstrate an inability
5 to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).
6 Once the claimant meets that burden, the Commissioner must come forward with substantial
7 evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir.
8 1985).

9       The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
10 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by
11 substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th
12 Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not
13 disabled must be upheld if the Commissioner applied the proper legal standards and the record
14 as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d
15 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir. 1988);
16 *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such
17 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
18 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d
19 643, 644 (9th Cir. 1987). The standard is less than a "preponderance of the evidence" standard.
20 *Matney,* 981 F.2d at 1019.

21       "[I]f the evidence can support either outcome, the court may not substitute its judgment
22 for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400). When
23 applying the substantial evidence standard, however, the court should not mechanically accept
24 the Commissioner's findings but should review the record critically and thoroughly. *Day v.*
25 *Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Reviewing courts must consider the evidence
26 that supports as well as detracts from the Commissioner's conclusion. *Id*. A denial of benefits
27 will be set aside if the Commissioner fails to apply proper legal standards in weighing the
28 evidence even though the findings may be supported by substantial evidence. *Frost v.*

- 9 -

*Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d at 751 (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

*Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

The decision of the ALJ is not supported by substantial evidence. His conclusion that Foster is able to perform medium work is not supported by the record. (Tr. 314-20).

The ALJ relied on the opinion of the examining physician, Genifer Y. Chavez, M.D., and the non-examining disability determination physician in determining Foster is capable of performing medium work[7]. (Tr. 245-47, 248-55). These reports, however, were prepared in May of 2000 and were based on Foster's main physical complaints at the time – low back pain and low visual acuity. *Id.* They were prepared before Foster developed the angina pectoris and left bundle branch block that the ALJ now concedes are severe impairments. Accordingly, they do not accurately characterize Foster's current exertional limitations.

Moreover, these opinions are contradicted by those of Mark C. Carnett, D.O., Foster's primary care physician. (Tr. 653). Beginning in July of 2002, Carnett treated Foster for unstable angina and hypercholesterolemia. (Tr. 549). In February of 2004, Carnett wrote a letter certifying Foster "is, indeed, disabled due to her multiple medical problems." (Tr. 541).

The ALJ legitimately characterizes Carnett's letter as "not helpful" in that it fails to specify Foster's impairing condition and fails to specify work restrictions. (Tr. 33). Nevertheless, Carnett's letter in conjunction with the clinical record is significant evidence that Foster's physical condition may have deteriorated in the almost four years since Chavez and the DDS physician authored their opinions. (Tr. 541-49).

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). "The ALJ is not a mere umpire . . . but has an independent duty to fully

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. § 416.967.

- 11 -

develop the record . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). "This duty exists even when the claimant is represented by counsel." *Smolen*, 80 F.3d at 1288.

The duty to supplement the medical record is triggered by "ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *See also* 20 C.F.R. § 416.912(e). Here, the medical record is sufficiently ambiguous to trigger the ALJ's duty to supplement. The ALJ concedes Foster suffers from severe impairments – angina pectoris and left bundle branch block. These impairments indicate the presence of cardiovascular disease. There is, however, no indication in the record as to how these impairments affect Foster's exertional abilities. The only opinions in the record that evaluate Foster's exertional ability date from an earlier period, before Foster developed these severe impairments.

The record on Foster's exertional ability is ambiguous or otherwise inadequate. *See, e.g., Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("Here, the medical evidence was sufficiently ambiguous to trigger the ALJ's duty because of the obvious vicissitudes in Webb's health, particularly the ways in which his conditions improved and worsened as a result of the afflictions and their treatments."). Accordingly, the ALJ had a duty to supplement the record before evaluating Foster's exertional limitations. *See* 20 C.F.R. § 416.912(e). His RFC finding, which was based on Chavez' nearly four-year-old report, is not supported by substantial evidence. *See also Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006) (The ALJ's evaluation of the claimant's RFC was not supported by substantial evidence where the medical record revealed the claimant was experiencing increased seizure activity but the ALJ failed to question her treating physician as to whether this seizure disorder would limit her ability to work.); *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003) (Even if the ALJ believed the treating physician's opinions were of no value, the ALJ was obligated to contact the doctor for "additional evidence or clarification" and "for an assessment of how the impairments limited

1 [the claimant's] ability to engage in work-related activities" given claimant's extensive
2 treatment history.); *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000)

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and enter an order remanding the plaintiff's claim for further proceedings consistent with this report. [#9, 10] The Commissioner should supplement the record with additional evidence as to the claimant's exertional limitations resulting from to her cardiovascular condition and reevaluate the claimant's RFC.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 13th day of July, 2007.

_____
Glenda E. Edmonds
United States Magistrate Judge